## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

MICHAEL A. SCRIVEN,

                          Plaintiff,

         v.                                              CASE NO. 22-3282-JWL

VITAL CORE, LLC, et al.,

                          Defendants.

### MEMORANDUM AND ORDER

This matter is a civil rights action.  Plaintiff is a pretrial detainee at the Sedgwick County Jail ("SCJ") in Wichita, Kansas.  By order dated November 10, 2022 (Doc. 3; "MOSC"), the Court directed Plaintiff to file an amended complaint that cures all the deficiencies discussed in the MOSC.  Plaintiff filed an Amended Complaint (Doc. 5), which is now before the Court for screening.  The Court's screening standards are set forth in detail in the MOSC.

Mr. Scriven's Amended Complaint (Doc. 5) continues to allege that the medical care provided by the defendants at the SCJ is constitutionally deficient.  He states that he suffers from the following chronic health conditions: a prosthetic pelvis; plates in each right and left acetabulum; over 10 screws in that hardware; a prosthetic right hip; a rod in the right femur; hardware in the left sacral iliac joint holding the joint together, which hardware is fractured and lodged in the joint; pins and plates in the right ribs; a traumatic brain injury; neuropathy/paralysis; severe tendinopathy; arthritis; severe degenerative joint disease; dystrophic calcification of the soft tissue; and heterotrophic ossification very badly infecting his hips and pelvis.  He states that he

has huge palpable masses of bone growth in his abdomen, pelvis, hips, and legs, digging into tissue and muscle.

After he was injured in 2019, he began a series of medications to treat his chronic pain. Eventually, he was started on Tramadol.  His dosage was repeatedly increased as his conditions worsened.  Dr. Stopp, physician at the SCJ, approved this treatment.  As the bone masses and soft tissue calcification continued to increase, Plaintiff was sent to outside orthopedic specialists under the supervision of Dr. Stopp and Director of Nursing ("DON") Ryan.  The orthopedic specialists determined that numerous complex surgeries would be required to remove the calcification and ossification, that Plaintiff was unlikely to survive the surgeries, and that if he did survive, he was unlikely to be able to walk.  The consultants added two medications to the Tramadol and ordered an MRI.  When Plaintiff went to his follow up appointment, the orthopedic specialist decided his Tramadol dose should be doubled and that he should consult with an orthopedic surgeon to discuss removing some of the bone growth that was digging into and cutting Plaintiff's muscle and tissue.

Plaintiff states that the doubled dose of Tramadol was effective and approved by Dr ,Stopp, Wellpath, and DON Ryan.  Plaintiff was receiving the Tramadol and waiting for his Wellpath-approved appointment with the orthopedic surgeon to be scheduled when Vital Core took over for Wellpath as the medical provider at the SCJ.  Vital Core cancelled the surgical referral and denied Plaintiff his prescribed Tramadol.  Instead, Plaintiff was offered Tylenol or ibuprofen.  Plaintiff asserts that this "has caused me to suffer physical pain like no person would ever suggest in any circumstances is humane."  Doc. 5, at 6.

On September 6, 2022, APRN Tracy (LNU) informed Mr. Scriven that Vital Core has a policy to stop all chronic care treatments, and he would no longer receive Tramadol.  Instead, she was putting him on Tylenol.  Plaintiff objected, explaining all of his chronic conditions, the pain

he experiences, his treatment history, and that his conditions will not improve.  Tracy said, "I have no doubt it helps you."  She said she would talk to Dr. Stopp and DON Ryan to make sure she would not lose her job if she allowed him to keep taking Tramadol.  Later that night, Tracy told Plaintiff she had discussed his objections with Dr. Stopp and DON Ryan, but they were still discontinuing the Tramadol and prescribing Tylenol.  She told Plaintiff it was a policy, and they were enforcing it against every patient.  Plaintiff again objected, telling her that Tylenol and any form of acetaminophen hurts his kidney and stomach, and it was not effective for his pain.

Plaintiff states that he has repeatedly complained of severe pain to Tracy since September 6, but nothing has changed.  In response to an electronically filed complaint, Jennifer (LNU), Vice President of Vital Core, and Dr. DeMarco, Medical Director of Vital Core, met with Plaintiff on September 21, 2022.  They asked him about his medical conditions and treatment, which he fully described to them.  When he complained about Tracy refusing to give him any other pain relief, Jennifer told him it is a policy.  Dr. DeMarco said removing the Tramadol is necessary to prepare Plaintiff's brain to better receive the opiates he will need for his chronic pain in the future when he is released.  Dr. DeMarco asked if Plaintiff was still having muscle spasms, and Plaintiff said that he was and that they last up to two minutes at times.  Dr. DeMarco prescribed Baclofen to treat the spasms but refused to reinstate the Tramadol.

Plaintiff names as defendants Vital Core LLC, contracted healthcare provider at the SCJ; Jennifer (LNU), Vice President of Vital Core; Dr. DeMarco, Director of Vital Core; Ryan (LNU), Director of Nursing for Vital Core at the SCJ; and Dr. Stopp, Supervisor for Vital Core at the SCJ. Mr. Scriven seeks compensatory damages of $400,000, as well as punitive damages of $1,000,000.

To summarize Plaintiff's allegations, he suffers severe chronic pain from numerous serious conditions; the pain was controlled by Tramadol as prescribed or approved by Dr. Stopp and Wellpath; Vital Core took over at the SCJ and removed Plaintiff's Tramadol in favor of Tylenol or ibuprofen; and, as a result, Plaintiff is unnecessarily suffering severe pain.  The Eighth Amendment prohibits the "*unnecessary* and wanton infliction of pain." *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (emphasis added).  The Tenth Circuit recently clarified that under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability."  *Lucas v. Turn Key Health Clinics, LLC*, No. 22-5002, 2023 WL 327846, at *5 (10th Cir. Jan. 20, 2023) (emphasis in original).   If that argument were accepted, "every institutional doctor or gatekeeping official could shield themselves from constitutional liability by simply prescribing any mild over-the-counter pain reliever, regardless of symptoms." *Id*.

The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate officials of the SCJ.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  Accordingly, the Court orders the appropriate officials to prepare and file a *Martinez* Report.  Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915.

**IT IS THEREFORE ORDERED BY THE COURT** that**:**

(1)     Officials responsible for the operation of the SCJ are directed to undertake a review of the subject matter of the Amended Complaint:

a.     To ascertain the facts and circumstances;

b.      To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

c.      To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(2)     Upon completion of the review, a written report shall be compiled which shall be filed with the Court **by February 17, 2023** and served on Plaintiff.  If the SCJ officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s).  The SCJ officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. 5.4.2(b).  Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

(3)     Authorization is granted to the officials of SCJ to interview all witnesses having knowledge of the facts, including Plaintiff.

(4)     No answer or motion addressed to the Amended Complaint shall be filed until the *Martinez* Report required herein has been prepared.  If the Complaint survives screening, the Court will enter a separate order for service that sets an answer deadline.

(5)     Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed Defendant's answer or response to the Complaint and the report ordered herein.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the Sedgwick County Sheriff as an interested party on the docket for the limited purpose of preparing the *Martinez* Report

ordered herein.  Upon the filing of that report, the Sheriff may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, to the Sedgwick County Sheriff, and to the Sedgwick County District Attorney.

**IT IS SO ORDERED.**

**Dated January 27, 2023, in Kansas City, Kansas.**

<u>**S/ John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**