## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MICHAEL A. SCRIVEN,

      *Plaintiff,*

  vs.

VITALCORE HEALTH
STRATEGIES, LLC (named as "Vital Core,
LLC"), et al.,

      *Defendants.*

Case No. 22-3282-EFM-RES

### MEMORANDUM AND ORDER

      Pro se Plaintiff Michael Scriven brings this action against Defendants VitalCore Health Strategies, LLC (incorrectly named as "Vital Core LLC"), Jennifer Ehrlich, Tracy Staley, Dr. Harold Stopp, Ryan Fickle, and Dr. John Tomarchio (incorrectly named as "Demarco") for alleged violations of his constitutional rights while in custody at the Sedgwick County Jail.  Plaintiff asserts two claims: (1) violation of his Fourteenth Amendment rights under 42 U.S.C. § 1983 and (2) conspiracy under 42 U.S.C. § 1985.  Defendants each filed a Motion to Dismiss Plaintiff's claims (Docs. 11, 14, 17, 20, 23, 26).  As explained below, the Court grants in part and denies in part each Defendants' Motion.

## I.    Factual and Procedural Background[1]

Plaintiff is a pretrial detainee at the Sedgwick County Jail.  He suffers from a number of chronic health conditions including a prosthetic pelvis; plates in each right and left acetabulum; over 10 screws in that hardware; a prosthetic right hip; a rod in the right femur; hardware in the left sacral iliac joint holding the joint together; pins and plates in the right ribs; a traumatic brain injury; neuropathy/paralysis; severe tendinopathy; arthritis; severe degenerative joint disease; dystrophic calcification of the soft tissue; and heterotrophic ossification affecting his hips and pelvis.  He also has huge palpable masses of bone growth in his abdomen, pelvis, hips, and legs, digging into tissue and muscle.

After being injured in 2019, Plaintiff began a series of different medicines to treat his chronic pain.  Eventually his care provider prescribed him Tramadol.  Defendants Dr. Stopp, physician at the Sedgwick County Jail, and Nurse Fickle, Director of Nursing at the Sedgwick County Jail, approved this treatment.  As Plaintiff's condition worsened, Dr. Stopp and Nurse Fickle sent him to an outside orthopedic specialist.  The orthopedic specialist determined that numerous complex surgeries would be required to remove the calcification and ossification, that Plaintiff likely would not survive the surgeries, and if he did, he would likely never walk again. The specialist ordered two medications in addition to the Tramadol and ordered an MRI.  At Plaintiff's follow up appointment, the orthopedic specialist doubled Plaintiff's Tramadol prescription and decided he should consult with an orthopedic surgeon to discuss removing some of the bone growth that was cutting into the muscle and tissue.

---

[1] The facts are taken from Plaintiff's Amended Complaint.

The double dose of Tramadol was effective and approved by Wellpath, the former healthcare provider at the Sedgwick County Jail, Dr. Stopp, and Nurse Fickle. While Plaintiff was waiting for his appointment with an orthopedic surgeon, VitalCore became the healthcare provider for the Sedgwick County Jail. VitalCore denied Plaintiff Tramadol and offered him ibuprofen or Tylenol instead. Plaintiff suffered extreme pain and distress because of the denial of Tramadol.

Plaintiff alleges in further detail that on September 6, 2022, Defendant Tracy Staley, a nurse practitioner at the Sedgwick County Jail, denied him Tramadol for his pain treatment and offered him ibuprofen instead. Plaintiff explained to Nurse Staley his chronic conditions, his past medical treatment, and the extent of his pain. Nurse Staley responded, "I have no doubt it [Tramadol] helps you," but explained that she needed to speak with Dr. Stopp and Nurse Fickle first to make sure she would not lose her job for giving him Tramadol. Plaintiff then told Nurse Staley that he could not have nsaids (a type of medication which includes ibuprofen) because they are dangerous to his stomach and they do not treat his pain.

Later that night, Nurse Staley told Plaintiff that she spoke with Dr. Stopp and Nurse Fickle, but they were discontinuing the Tramadol and prescribing Tylenol. Nurse Staley said it was policy and that it was enforced for every inmate. Plaintiff then told her acetaminophen hurts his stomach. Nurse Staley asked Plaintiff what he was going to take for his pain, and he said nothing. Nurse Staley then escorted him out of the clinic.

On September 21, Defendants Dr. Tomarchio, Medical Director of Vital Core, and Jennifer Ehrlich, Vice President of Vital Core, met Plaintiff in the clinic in response to his complaints that Nurse Staley would not give him Tramadol. They asked Plaintiff about his conditions, his past care and treatment, and the severity of his pain, which he fully described to them. Ehrlich told Plaintiff the problem is not the doctor or prescriber, but that it was a policy. Dr. Tomarchio told

Plaintiff that removing the Tramadol is necessary to prepare Plaintiff's brain to receive the opiate pain medicine when he is released in the future.  Dr. Tomarchio then asked Plaintiff about his muscle spasms and treated them.  Plaintiff then returned to his cell.

On September 27, Plaintiff went back to the clinic and begged Nurse Staley for a medicine that would be safe for him to take.  He said he was in severe pain, losing daily function, and in distress.  Nurse Staley asked him if he had seen mental health services.  Plaintiff then asked Nurse Staley if she knew the extent of his conditions, to which she responded yes. Plaintiff then asked her what she would give him for his pain, and she said "nothing" and asked the deputy to escort him out.  Plaintiff alleges that Nurse Staley continued to put ibuprofen on his chart for 10 weeks and ignored his verbal complaints to her and others that the ibuprofen was not helping his pain.

On October 26, Plaintiff once again asked for medicine to help him.  He was later called to the clinic and seen by another nurse.  That nurse said she could not change his treatment but she would put him on the list to see his provider.  Plaintiff, however, never saw the provider.  Plaintiff later discovered that Nurse Staley put ibuprofen on his chart and would not take the appointment the nurse put in for him.

Plaintiff filed suit in October 2022.  His Amended Complaint asserts the following claims under 42 U.S.C. § 1983:  (1) a claim for deliberate indifference of his serious medical needs under the 14th Amendment against Defendants Nurse Staley, Ehrlich, and Dr. Tomarchio; (2) a claim for supervisory liability against Defendants Dr. Stopp and Nurse Fickle; and (3) a claim for *Monnell* liability against Defendant Vital Core.  Plaintiff also asserts a claim for conspiracy under 42 U.S.C. § 1985 against all six Defendants.  Plaintiff seeks compensatory damages of $400,000, as well as punitive damages of $1,000,000.

## II.    Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a claim where the plaintiff has failed to state a claim upon which relief can be granted.[2]  Upon such a motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[3]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[4]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of the claims and the grounds on which each claim rests.[5]  Under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and construe them in a light most favorable to the plaintiff.[6]  But the court need not afford such a presumption to legal conclusions.[7]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[8]  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then a plaintiff has 'not nudged their claims across the line from conceivable to plausible.' "[9]

---

[2] Fed. R. Civ. P. 12(b)(6).

[3] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[5] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[6] *Iqbal*, 556 U.S. at 678–79.

[7] *Id.*

[8] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (citation omitted).

[9] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."[10]  A pro se litigant is entitled to a liberal construction of his pleadings.[11]  If a court can reasonably read a pro se complaint in such a way that it could state a claim on which it could prevail, it should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with the pleading requirements."[12]  However, it is not the proper role of a district court to "assume the role of advocate for the pro se litigant."[13]  Additionally, a pro se litigant is not excused from complying with the rules of the Court and is subject to the consequences of noncompliance.

### III.    Analysis

### A.    Defendants' Motions to Dismiss Based on Eleventh Amendment Immunity

Plaintiff sues Nurse Staley, Dr. Stopp, Nurse Fickle, Dr. Tomarchio, and Ehrlich in their individual and official capacities and VitalCore in its official capacity.  Defendants argue that Plaintiff's claims against them in their official capacity are barred by the Eleventh Amendment.[14]  The Eleventh Amendment generally bars suits against states based on their sovereign immunity.[15]

---

[10] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[11] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because Mr. Trackwell appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

[12] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[13] *Id.*

[14] Although Defendants assert a 12(b)(6) motion, the court must consider Defendants' immunity arguments under Rule 12(b)(1) because "[t]he defense of sovereign immunity is jurisdictional in nature." *Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urb. Dev.*, 554 F.3d 1290, 1295 (10th Cir. 2009) (citation omitted).

[15] *Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1168 (10th Cir. 2015) (quoting *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court.").

It also bars federal court jurisdiction over a state official acting in his official capacity in a suit for damages.[16]  Immunity under the Eleventh Amendment is extended to "entities created by state governments that operate as alter egos or instrumentalities of the states" through the arm of the state doctrine.[17]   The entity asserting Eleventh Amendment immunity bears the burden of establishing that it is an arm of the state.[18]

The determination of whether an entity is an arm of the state is a two-part analysis.  First, the court looks at the following four, potentially dispositive, factors:  (1) "the character ascribed to the entity under state law;" (2) "the autonomy afforded the entity under state law;" (3) the entity's finances; and (4) "whether the entity . . . is concerned with local or state affairs."[19]  If these factors conflict, the court then "proceed[s] to the second stop and consider[s] the 'twin reasons' underlying the Eleventh Amendment—avoiding an afront to the dignity of the state and the impact of a judgment on the state treasury."[20]

Here, VitalCore has not established that it is an arm of the state, and Nurse Staley, Dr. Stopp, Nurse Fickle, Dr. Tomarchio, and Ehrlich have not established that they are state officials. Rather than address any of the four factors listed above, Defendants simply assert, without citation to any authority, that they are immune from suit under the Eleventh Amendment because they are

---

[16] *See Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 & n.13 (10th Cir. 1998) (explaining that the Eleventh Amendment barred plaintiffs' §§ 1981, 1983, and 1985 claims for money damages against state officials in their official capacities).

[17] *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574 (10th Cir. 1996).

[18] *Hennessey v. Univ. of Kan. Hosp. Auth.*, 53 F.4th 516, 530 (10th Cir. 2022).

[19] *Id.* at 528 (quoting *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1250, 1253 (10th Cir. 2007)).

[20] *Id.*  (quoting *Duke v. Grady Mun. Sch.*, 127 F.3d 972, 978 (10th Cir. 1997)).

contracted state actors.  This argument confuses the requirement in a § 1983 claim that a person act under color of state law with the Eleventh Amendment arm of the state doctrine.

Additionally, to the extent Plaintiff asserts a *Monell* claim against VitalCore, the Court denies Eleventh Amendment immunity.  Under the *Monell* doctrine, a plaintiff may sue a municipality for constitutional violations pursuant to the body's policies.[21]  The Tenth Circuit has held that traditional municipal liability principles apply to *Monell* claims brought against private corporations.[22]  And, municipalities are not entitled to Eleventh Amendment immunity.[23]  Although VitalCore is a private company, it is treated as a municipality in the context of Plaintiff's *Monell* claim.  Therefore, it is not entitled to Eleventh Amendment immunity.

Similarly, the remaining Defendants are not entitled to immunity if they are employees of VitalCore.  The Eleventh Amendment does not bar official capacity claims against municipal employees.[24]  The Amended Complaint alleges that Dr. Tomarchio and Ehrlich are VitalCore employees, and thus, they are not entitled to Eleventh Amendment immunity.  It is unclear from the Amended Complaint whether Nurse Staley, Dr. Stopp, and Nurse Fickle are employed by VitalCore or the Sedgwick County Jail.  Because of this ambiguity, the Court denies them Eleventh Amendment immunity as well.   Accordingly, Defendants' Motion to Dismiss based on Eleventh Amendment immunity is denied.

---

[21] *Lucas v. Turn Key Health Clinics*, 58 F. 4th 1127, 1144 (10th Cir. 2023) (*citing Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

[22] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003).

[23] *Steadfast Ins. Co.*, 507 F.3d at 1253 (citation omitted).

[24] *Puskaric v. Patton*, 2016 WL 4926845, at *5 (W.D. Okla Sept. 14, 2016); *Williams v. City of New York*, 121 F. Supp. 3d 354, 375-75 (S.D.N.Y. 2015); *Kwok Sze v. Pui-Ling Pang*, 2014 WL 1513986, at *2 (M.D. Penn. 2014).

**B.       Defendants' Motions to Dismiss for Failure to Exhaust Administrative Remedies**

All Defendants move to dismiss on the basis that Plaintiff did not exhaust his administrative remedies before filing suit.  Under the Prison Litigation Reform Act ("PLRA"), an inmate must exhaust his administrative remedies before filing suit under § 1983.[25]  The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[26]

The exhaustion requirement is an affirmative defense under the PLRA.[27]  Although Kansas law requires an inmate to file proof that he has exhausted his administrative remedies with a petition alleging state-law claims, the PLRA does not require an inmate to plead exhaustion in his complaint when bringing federal claims.[28]  The burden of proof for exhaustion of administrative remedies lies with the defendant.[29]

The Tenth Circuit has advised district courts that a Rule 12(b)(6) motion to dismiss for failure to exhaust should only be granted in "'rare cases' in which 'it is clear from the face of the complaint that the prisoner has not exhausted his administrative remedies.'"[30]  Defendants argue that dismissal is appropriate here because Plaintiff has not alleged or attached any grievances to

---

[25] 42 U.S.C. § 1997e(a).

[26] *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).

[27] *Jones v. Bock*, 549 U.S. 199, 216 (2007).

[28] *Id.*; *see also Sperry v. McKune*, 305 Kan. 469, 384 P.3d 1003, 1012–13 (2016) (holding that only state-law claims are impacted by K.S.A. § 75-52,138's pleading requirement).

[29] *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

[30] *Lax v. Corizon Med. Staff*, 766 F. App'x 626, 628 (10th Cir. 2019) (quoting *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)).

his Amended Complaint showing that he completed the grievance procedure at the Sedgwick County Jail.  But, on page 20 of Plaintiff's Amended Complaint, Plaintiff indicates that he previously sought informal or formal relief from the appropriate administrative officials.  Plaintiff then explains that he filed "a complaint and grievances in the kite system but to no avail."  Thus, it's not clear from the Amended Complaint that Plaintiff did not exhaust his administrative remedies.  Defendants' motion to dismiss on this basis is denied.

**C.    Defendants' Motions to Dismiss Plaintiff's § 1983 Claim**

Plaintiff invokes 42 U.S.C. § 1983 as the basis for his claims arising under the United States Constitution.  Section 1983 provides a cause of action for the deprivation of federal rights by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory."  The statute "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[31]  Plaintiff alleges a § 1983 claim against Nurse Staley, Dr. Stopp, Nurse Fickle, Dr. Tomarchio, Ehrlich, and VitalCore for deliberate indifference to his serious medical needs under the Fourteenth Amendment.[32]

*1.    Collateral Estoppel*

The Court first addresses Dr. Stopp's and Nurse Fickle's assertion that Plaintiff's § 1983 claim is barred by the doctrine of collateral estoppel.  "Collateral estoppel, or issue preclusion, means that once an issue of ultimate fact has been determined by a valid and final judgment, that

---

[31] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

[32] As discussed below, under the Due Process Clause of the Fourteenth Amendment, pretrial detainees are afforded the protections of the Eighth Amendment.  *Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992) (citation omitted).  Thus, Plaintiff correctly asserts a claim for deliberate indifference under the Fourteenth Amendment.

-10-

issue cannot again be litigated between the same parties in any future lawsuit."[33]  Collateral

estoppel "aims to promote judicial efficiency, encourage reliance on previously adjudicated

matters, and avoid inconsistent rules of decision."[34]  There are four elements to consider under

issue preclusion:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been fully adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.[35]

With regard to the first element of whether the previous issue and the current issue are identical,

some of the questions courts consider include:

> Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?  Does the new evidence or argument involve application of the same rule of law as that involved in the prior proceeding?  Could pretrial preparation and discovery relating to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?  How closely related are the claims involved in the two proceedings?[36]

Defendants argue that collateral estoppel bars Plaintiff's claims against them because they

were previously raised and dismissed in another action before this Court—*Scriven v. Board of*

*Sedgwick County Commissioners*.[37]  According to the amended complaint, that case revolved

---

[33] *Phelps v. Hamilton*, 122 F.3d 1309, 1318 (10th Cir. 1997) (quotations marks, brackets, and citation omitted).

[34] *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1297 (10th Cir. 2014).

[35] *B-S Steel of Kansas, Inc. v. Texas Indus., Inc.*, 439 F.3d 653, 662 (10th Cir. 2006) (quotation and citation omitted).

[36] *Id.* at 663 (citation omitted).

[37] Case No. 20-cv-03110.  On a motion to dismiss, the Court may take judicial notice of matters of public record—including court documents—without converting the motion into one for summary judgment. *See Erikson v. Farmers Grp., Inc.*, 151 F. App'x 672, 675 (10th Cir. 2005).

around an incident between Plaintiff and several Sedgwick County Jail deputies on April 20, 2019. Plaintiff claimed that the deputies used excessive force by dropping him on the stairs while handcuffed, dropping him face-first from a height of four feet to his cell floor, and striking his back, ribs, and neck with their knees.  Plaintiff alleged that when he was taken to the medical clinic, he was not seen by a doctor.  Weeks later, he allegedly saw Dr. Stopp.  According to Plaintiff, although Dr. Stopp and Nurse Fickle knew of an injury to his back, they did nothing and put in repeated requests for imaging on the wrong part of Plaintiff's body.  Plaintiff asserted, among other claims, a claim under § 1983 for deliberate indifference against Dr. Stopp and Nurse Fickle.  The Court dismissed Plaintiff's claim against Dr. Stopp on the basis that the allegations did not establish that Dr. Stopp acted with reckless indifference to Plaintiff's medical condition. Plaintiff voluntarily dismissed his claim against Nurse Fickle.

Contrary to Defendants' assertion, collateral estoppel does not bar Plaintiff's claims against Dr. Stopp and Nurse Fickle in this case.  The issues decided in Plaintiff's previous action are not identical to the issues presented in this action.  Plaintiff's claims in his previous action stem from the injuries he received as a result of the deputies' alleged excessive force in April 2019 and the actions Dr. Stopp and Nurse Fickle took to treat these injuries at that time.  Plaintiff's claims in this case arose in September 2022 when he was denied his prescribed pain medication.  The only evidence that would possibly overlap the two lawsuits is Plaintiff's health records, as they show Plaintiff's chronic health conditions.  The parties would need to take additional discovery in this case, including but not limited to, discovery on the topic of Plaintiff's treatment by outside orthopedic specialists, VitalCore's alleged policy regarding narcotic pain medication, and Defendants' actions under the alleged policy.  Thus, the first element of collateral estoppel is not

met, and the doctrine does not bar Plaintiff's claims.  The Court denies Defendants Dr. Stopp's and Nurse Fickle's Motions to Dismiss on this basis.

### 2.    *Qualified Immunity*

Defendants Nurse Staley, Dr. Stopp, Nurse Fickle, Ehrlich, and Dr. Tomarchio argue that Plaintiff's § 1983 claim must be dismissed because they are entitled to qualified immunity.  "The doctrine of qualified immunity shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law."[38]  When the defense of qualified immunity is asserted, the burden shifts to the plaintiff to show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."[39]  "Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity."[40]  But asserting the defense at this stage "subjects the defendants to a more challenging standard of review than would apply on summary judgment."[41]  This is because it is "the defendants' conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness."[42]

Plaintiff argues that Defendants are not entitled to qualified immunity because "VitalCore and its employees are for profit corporations providing services in a correctional facility."  In

---

[38] *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting *Elder v. Holloway*, 510 U.S. 510. 512 (1994)).

[39] *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (internal quotations and citation omitted).

[40] *Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019) (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)).

[41] *Id.*

[42] *Id.*

*Richardson v. McKnight*,[43] the Supreme Court explained that "private actors are not *automatically* immune" from suit in a § 1983 case.[44]  Instead, the qualified immunity doctrine applies to private actors if the qualified immunity defense "is supported by historical practice or based on public policy considerations."[45]  In *Tanner v. McMurray*,[46] the Tenth Circuit held that "neither 19th century common law nor modern policy considerations support allowing private medical professionals who are employees of a contractor that provides healthcare in jails or prisons to avail themselves of qualified immunity."[47]

The Amended Complaint alleges that VitalCore is a healthcare company providing services at the Sedgwick County Jail; that Defendants Ehrlich and Dr. Tomarchio are employed by VitalCore; and that Defendants Nurse Staley, Dr. Stopp, and Nurse Fickle work at the Sedgwick County Jail.  The Court cannot determine based on these allegations whether each Defendant is entitled to immunity under *Tanner*.  Plaintiff does not specify whether Nurse Staley, Nurse Fickle, or Dr. Stopp are employed by VitalCore or the Sedgwick County Jail, whether Ehrlich is medical professional, or the nature of VitalCore's business.  Because the factual record is not complete, Defendants' Motion to Dismiss on this basis of qualified immunity denied as premature.

      3.    *Failure to State a Claim under Rule 12(b)(6)*

        a.    Deliberate Indifference Standard

---

[43] 521 U.S. 399 (1997).

[44] *Id.* at 412.

[45] *Tanner v. McMurray*, 989 F.3d 860, 867 (10th Cir. 2005) (quoting *Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc.*, 413 F.3d 1163, 1166 (10th Cir. 2005)).

[46] 989 F.3d 860.

[47] *Id.* at 870.

The Eighth Amendment prohibits "cruel and unusual punishment."  "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."[48]  Under the Due Process Clause of the Fourteenth Amendment, pretrial detainees "are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment."[49]

To state a claim for deliberate indifference to a serious medical need, the plaintiff's allegations must satisfy "both an objective and subjective component" with respect to each defendant.[50]  In the objective analysis, the deprivation must be "sufficiently serious."[51]  "A medical condition is 'sufficiently serious' if 'the condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"[52]

To satisfy the subjective component, the plaintiff must show that the "prison official knows of and disregards an excessive risk to inmate health or safety."[53]  "[T]he official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[54]

---

[48] *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

[49] *Frohmader*, 958 F.2d at 1028 (citation omitted).

[50] *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Sealock v. Colorado*, 218 F>3d 1205, 1209 (10th Cir. 2000)).

[51] *Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1044 (10th Cir. 2022).

[52] *Id.* (quoting *Al-Turki v. Robinson*, 762 F.3d 1188, 1192–93 (10th Cir. 2014)).

[53] *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (quoting *Sealock*, 218 F.3d at 1209).

[54] *Id.* (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

b.      Supervisory Liability Standard

"Section 1983 does not authorize liability under a theory of respondeat superior."[55]  The elements of a supervisor liability claim under §1983 are: "(1) personal involvement; (2) sufficiently causal connection; and (3) culpable state of mind."[56]  Under the first element, a plaintiff must show an "affirmative link exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise."[57]  As to the second element, "the plaintiff [must] show that the defendant's alleged action(s) caused the constitutional violation by setting in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights."[58]  As to the third element, "the factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision."[59]  Thus, in this case, Plaintiff must allege that the Defendant knows of and disregards an excessive risk to inmate health or safety.

c.      Nurse Staley

Plaintiff claims that Nurse Staley was deliberately indifferent to his serious medical needs because she continually ignored his pain complaints and denied him Tramadol.  Nurse Staley seeks

---

[55] *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011).

[56] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)).

[57] *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (quotations and citation omitted).

[58] *Burke*, 935 F.3d at 997 (quoting *Estate of Booker*, 745 F.3d at 435).

[59] *Dodds*, 614 F.3d at 1204 (citing *Iqbal*, 556 U.S. at 677).

-16-

dismissal of Plaintiff's claim on the basis that she did not participate in the decision but rather was following doctor's orders and VitalCore's policy.

Liability "under § 1983 must be based on personal involvement in the alleged constitutional violation."[60]   Here, the allegations show that Nurse Staley had no authority to give Plaintiff Tramadol when he first asked for it or later as he continued to complain about not receiving it. Plaintiff alleges that when he first spoke with Nurse Staley, she told him she needed Dr. Stopp's and Nurse Fickle's approval to give him Tramadol or she would lose her job.  Later that evening, Nurse Stacey told Plaintiff that Dr. Stopp and Nurse Fickle limited his pain medication to ibuprofen or Tylenol per policy.  Because Nurse Staley had no authority to change Plaintiff's medication, she did not personally participate in the decision to deny Plaintiff Tramadol.

This reasoning also applies to Plaintiff's allegations that Nurse Staley continued to ignore his pain complaints and put ibuprofen on his chart.  Nurse Staley was bound by VitalCore's policy, as shown by Plaintiff's allegation that when he met with Ehrlich regarding his many complaints, Ehrlich told him he could not receive Tramadol because of the policy.  Because Plaintiff has not alleged Nurse Staley personally participated in the alleged constitutional violation, the Court therefore grants her Motion to Dismiss.

> ### d.    Dr. Stopp and Nurse Fickle

In his Amended Complaint, Plaintiff asserts a claim for supervisory liability against Dr. Stopp and Nurse Fickle alleging that they acquiesced to Nurse Staley's unconstitutional behavior

---

[60] *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997); *see also Snyder v. Harris*, 406 F. App'x 313, 318-19 (10th Cir. 2011) (affirming the grant of summary judgment for a defendant-nurse in a § 1983 action for lack of personal participation when there was evidence that the nurse, in denying the plaintiff's grievances, "deferred to the medical professionals to make the proper medical decisions as to the medical treatment that would be best" for the plaintiff, and the plaintiff "presented no facts to dispute [the nurse's] assertion that she was not in charge of his treatment and that treatment decisions were made by doctors, not by her").

and implemented and enforced a policy denying him effective treatment.  Dr. Stopp and Nurse

Fickle argue that Plaintiff's claim against them fails because (1) he does not allege personal

participation in the constitutional violation and (2) he does not allege they acted with sufficiently

culpable state of mind.[61]  The Court, however, disagrees.

A plaintiff may establish a defendant supervisor's personal involvement "by demonstrating

[the defendant's] personal participation, his exercise of control or direction, . . . or his knowledge

of the violation and acquiescence in its continuance."[62]  According to Dr. Stopp and Nurse Fickle,

there are no allegations in the Amended Complaint stating that they supervised or controlled Nurse

Staley.  But, Plaintiff specifically alleges that Nurse Staley sought their approval to give Plaintiff

Tramadol and that she followed their order to limit his pain medication to ibuprofen or Tylenol

pursuant to the policy.  These allegations undoubtedly show that Dr. Stopp and Nurse Fickle

controlled Nurse Staley's decision to deny Plaintiff Tramadol.  Beyond that, they show that Dr.

Stopp and Nurse Fickle personally participated in the decision to deny Plaintiff Tramadol.

Dr. Stopp and Nurse Fickle next argue that Plaintiff does not allege they acted with a

sufficiently culpable state of mind, *i.e.,* that they knew of and disregarded a risk to Plaintiff's

health.  They characterize Plaintiff's claim as a disagreement with his healthcare providers, which

they contend is not actionable under the Eighth Amendment.[63]  It is true that "a prisoner who

---

[61] Dr. Stopp and Nurse Fickle do not address Plaintiff's statements in his Amended Complaint and in his response to their Motions to Dismiss that they implemented or enforced a policy to provide him with a less effective treatment.  Because the Court concludes that Plaintiff's § 1983 claim against Dr. Stopp and Nurse Fickle survives on an alternative basis, the Court will not address this aspect of Plaintiff's claim.

[62] *Sigg v. Allen Cnty., Kan.*, 2016 WL 6716085, at *7 (D. Kan. Nov. 15, 2016) (quoting *Dodds*, 614 F.3d at 1195) (internal quotation marks and brackets omitted).

[63] Defendants also make a cursory statement that Plaintiff does not allege an adverse health condition.  To the extent Defendants are arguing that Plaintiff has not met the objective component of his deliberate indifference claim, the Court disagrees.  Plaintiff alleges that he suffers from severe chronic pain due to calcification of his soft

merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."[64]  But, given Plaintiff's allegations concerning his health and medication history, the denial of Tramadol in favor of an over-the-counter pain medication is not a "mere disagreement" with a specific course of treatment.  Plaintiff alleges that he suffers from serious and extremely painful medical conditions that are so intense that an orthopedic specialist doubled his Tramadol prescription.  Plaintiff further alleges that Dr. Stopp and Nurse Fickle were aware of his chronic medical conditions and approved and implemented the orthopedic specialist's prescription for Tramadol.  Despite this knowledge, Defendants ordered Nurse Staley to substitute less effective, over-the-counter pain medication in place of narcotic pain medicine.  Plaintiff's allegations thus demonstrate that Defendants knew of a substantial risk of harm to Plaintiff and disregarded it.  Dr. Stopps's and Nurse Fickle's Motions to Dismiss Plaintiff's § 1983 claim are denied.

     e.    Dr. Tomarchio

Plaintiff asserts a deliberate indifference claim against Dr. Tomarchio in the Amended Complaint.  In his response to Dr. Tomarchio's Motion to Dismiss, Plaintiff clarifies that "I never said Tomarchio was indifferent to medical needs and complaints of pain by refusing to prescribe narcotics . . ." but that "Tomarchio was deliberately indifferent . . . when he ignored my conditions and acquiesced to other Defendant's behavior creating and implementing harmful and unconstitutional policies."  The Court construes this statement to mean that Plaintiff is asserting a claim for supervisory liability based on official policy or custom.

---

tissue, ossification affecting his hips, huge palpable masses of bone growth and other health issues.  This is sufficient to satisfy the objective component of the deliberate indifference test.

[64] *Perkins v. Kan. Dept. of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999); *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (stating that a prisoner's right is to medical care—not the medical care he desires and the difference of opinion between the prisoner and the physical does not sustain a claim under § 1983).

A plaintiff may establish supervisor liability through the defendant's "promulgation, creation, implementation, or utilization of a policy that caused a deprivation of plaintiff's rights."[65] To state a claim based on this theory of supervisor liability, the plaintiff must plead that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."[66]

Dr. Tomarchio argues that Plaintiff's claim does not meet the first requirement—that he created or acted pursuant to an official VitalCore policy. According to Dr. Tomarchio, Plaintiff's claim that VitalCore has a policy prohibiting the use of narcotic pain medication is based on speculation. Dr. Tomarchio argues that another medical provider could just as easily decided to limit narcotic medication and determined this was a "policy" specific to Plaintiff. Dr. Tomarchio also argues that if Plaintiff is referring to opioid prescription administration and tracking policies that are federally mandated, such policy cannot be attributed to as a basis for liability against Dr. Tomarchio for complying with applicable law.

Dr. Tomarchio's reliance on hypotheticals and legal statements, without citation to authority, is not helpful. Furthermore, Plaintiff's assertion of a VitalCore policy is not based solely on speculation. Plaintiff alleges that both Nurse Staley and Ehrlic told him he could not have Tramadol per VitalCore's policy. Ehrlich was acting in her role as Vice-President when she told Plaintiff this, giving further credence to Plaintiff's assertion. Given Plaintiff's pro se status, he sufficiently pleads that VitalCore had a policy of prohibiting narcotic pain medication.

---

[65] *Sigg*, 2016 WL 6716085, at *8 (quoting *Dodds*, 614 F.3d at 1195); *see also Burke v. Regalado*, 935 F.3d 960, 997 (10th Cir. 2019) (citations omitted).

[66] *Smith v. Allbaugh*, 905, 911 (10th Cir. 2021).

Plaintiff's allegations also establish that Dr. Tomarchio implemented or used VitalCore's policy in denying Plaintiff's Tramadol.  Plaintiff alleges that Dr. Tomarchio was present when Ehrlich told him he could not have the medicine per policy.  He also alleges that Dr. Tomarchio refused to reinstate Plaintiff's Tramadol prescription after meeting with him.  Therefore, Plaintiff sufficiently alleges that Dr. Tomarchio implemented or utilized a VitaclCore policy to prohibit the use of narcotic pain medicine by inmates.[67]

Dr. Tomarchio next contends that Plaintiff does not plead he acted with a sufficiently culpable state of mind.  Like Dr. Stopp and Nurse Fickle, Dr. Tomarchio argues that Plaintiff's claim amounts to a mere disagreement with his medical providers as to the correct course of treatment, which is not sufficient to establish a constitutional violation.  He also argues that he was not indifferent to Plaintiff's pain complaints because he explained to Plaintiff "the reasoned medical basis for implementing the treatment plan for non-opioid pain management regimen."

Again, the allegations in the Amended Compliant do not support a finding that the denial of Tramadol in favor of over-the-counter pain medication is a "mere disagreement" as to the correct course of treatment.  Moreover, Dr. Tomarchio's assertion that he explained "the reasoned medical basis . . . for a non-opioid pain management regimen" exaggerates the allegations in the Amended Complaint.  Plaintiff only alleges that Dr. Tomarchio told him "he wants to prepare my brain to [] better receive the opiate pain medication I am going to need when I am released."  Not only is this not a reasoned medical explanation of pain management, but it also demonstrates that

---

[67] To the extent Plaintiff asserts that Dr. Tomarchio promulgated VitalCore's policy, the Court agrees with Dr. Tomarchio that this allegation is conclusory.  Plaintiff offers no facts supporting this assertion.  Nevertheless, Plaintiff's claim still survives on the basis that Dr. Tomarchio used or implemented VitalCore's policy in denying him Tramadol.

Dr. Tomarchio recognized the severity of Plaintiff's health conditions and his need for pain medication.

Plaintiff's allegations show that he explained his past medical history and treatment to Dr. Tomarchio during the meeting on September 22, yet Dr. Tomarchio refused to reinstate his Tramadol prescription in favor of ibuprofen.  Accordingly, the Court finds that Plaintiff adequately alleges that Dr. Tomarchio knew of and disregarded a serious medical risk to Plaintiff.  The Court denies Dr. Tomarchio's Motion to Dismiss as to Plaintiff's § 1983 claim.

   f.  Ehrlich

Plaintiff alleges that Defendant Ehrlich, in her role as Vice-President of VitalCore, was deliberately indifferent to his medical needs because she refused to treat his medical conditions and because she acquiesced to Defendant Staley's actions of denying him Tramadol.  Ehrlich did not provide any medical treatment to Plaintiff, and thus his claim against her hinges on supervisor liability theories.  As noted above, a plaintiff may plead supervisory liability (1) through a defendant supervisor's implementation or utilization of a policy that caused a deprivation of the plaintiff's rights or (2) by demonstrating the defendant supervisor's personal participation or knowledge of the violation and acquiescence in its continuance.[68]  Ehrlich argues that Plaintiff's allegations are not sufficient to establish her personal participation under either theory, but the Court disagrees.

As to the custom or policy theory of liability, the Court has already found that Plaintiff sufficiently alleges that VitalCore had a policy of prohibiting the use of narcotic pain medication. Plaintiff alleges that Ehrlich told him Staley could not give him Tramadol because of the policy,

---

[68] *Sigg*, 2016 WL 6716085, at *8 (quoting *Dodds*, 614 F.3d at 1195).

which demonstrates Ehrlich used or implemented this policy in continuing to deny Plaintiff his medication.[69]

Plaintiff also sufficiently alleges that Ehrlich knew of the violation and acquiesced to it. Plaintiff alleges that Ehrlich met with him regarding his many complaints about Nurse Staley, and after that meeting, he was still denied Tramadol.  According to Erhlich, Plaintiff's allegations demonstrate not that she acquiesced in the decision to deny Tramadol but rather that she determined the denial of it was medically appropriate.  She argues that the allegations in the Amended Compliant show that she met with Plaintiff to listen to his concerns, intervened and investigated his complaints, and ultimately confirmed that the medical treatment being rendered by providers was suitable for Plaintiff's condition.  This argument, however, grossly overstates Plaintiff's allegations.  While Ehrlich may have taken these actions in response to Plaintiff's complaints, Plaintiff does not allege this course of conduct in the Amended Complaint. Accordingly, the Court concludes that Plaintiff sufficiently alleges her personal participation in the alleged constitutional violation.

Ehrlich next argues that Plaintiff's allegations do not support a finding that she acted with a sufficiently culpable state of mind.  Again, Ehrlich argues that the Amended Complaint alleges that she "investigated [Plaintiff's] claims and conferenced with other competent medical providers before determining that the current course of treatment was medically appropriate and would not be changed per Plaintiff's request for narcotics."  And again, this argument overstates Plaintiff's allegations.  The Amended Complaint solely alleges that Plaintiff explained his medical conditions

---

[69] To the extent Plaintiff alleges that Ehrlich created VitalCore's policy, the Court agrees with Ehrlich that this allegation is conclusory.  Plaintiff offers no facts other than Ehrlich's position as Vice-President of VitalCore to support his allegation.  However, Plaintiff's claim still survives Ehrlich's Motion to Dismiss based on other theories of supervisor liability.

and past treatment to Ehrlich, and she told him Staley could not give him Tramadol per policy. Nowhere does Plaintiff allege that Ehrlich "conferenced with other medical providers" or "determine[ed] that the current court of treatment was medically appropriate."

The allegations show that Plaintiff presented his need for narcotic pain medication to Ehrlich and that Ehrlich disregarded this need in favor of giving him a less effective, over-the-counter pain medication. Thus, Plaintiff sufficiently alleges that Ehrlich knew of a serious health risk to Plaintiff and disregarded it. Accordingly, the Court denies Ehrlich's Motion to Dismiss as to Plaintiff's § 1983 claim.

> g.   VitalCore

Plaintiff asserts a claim for *Monell* liability against VitalCore. As noted above, the *Monell* doctrine allows a plaintiff to "sue local governing bodies directly for constitutional violations pursuant to the body's policies."[70] VitalCore argues that it cannot be held liable under *Monell* because it is not a municipality. But "*Monell* has been extended to 'private entities action under color of state law,' such as medical contractors."[71] Therefore, VitalCore cannot escape *Monell* liability on this basis.

To state a claim against a municipal entity, a plaintiff must plead a constitutional violation and the following three elements: (1) an official policy or custom, (2) causation, and (3) deliberate

---

[70] *Lucas*, 58 F.4th at 1144 (citing *Monell*, 436 U.S. at 690).

[71] *Id.* (quoting *Dubbs*, 336 F.3d at 1216).

indifference.[72]  Here, VitalCore's sole argument as to why Plaintiff's *Monell* claim fails is that he does not sufficiently allege an official policy or custom.

"A challenged practice may be deemed an official policy or custom for § 1983 municipal liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision."[73] Plaintiff alleges that VitalCore implemented a number of policies, including that "VitalCore had a policy of deliberate indifference and acquiescence to the inadequate medical treatment of Plaintiff," that "VitalCore had a policy of defying doctors orders for care and treatment," and that "VitalCore had a policy of failing to train to make sure its employees do not respond to obvious risks."  VitalCore argues that none of these are actual prescribed or written healthcare policies and procedures.  VitalCore acknowledges that Plaintiff believes he was denied medication pursuant to some policy of VitalCore, but even if this were true, this policy was only some undefined and unwritten management procedure and not a formal policy as required by law to state a *Monell* claim.

At this stage in the litigation, the Court is required to accept the allegations in the Amended Complaint as true and construe them in Plaintiff's favor.  Furthermore, pro se pleadings are entitled to liberal construction.   Plaintiff's allegations indicate that VitalCore had a policy of prohibiting narcotic medication for pretrial detainees.  The policy is not based on presumptions but the statements of VitalCore's employees.  Indeed, Ehrlich, acting in her role as VitalCore Vice-

---

[72] *See id*. at 1144-45 (stating that a *Monell* claim can be based on an individual constitutional violation or a systemic failure of multiple individuals resulting in a constitutional violation) (quoting *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1184 (10th Cir. 2020)).

[73] *Schneider*, 717 F.3d at 770.

President, told Plaintiff that he could not take Tramadol per policy.  Thus, the Court finds that Plaintiff sufficiently alleges a VitalCore policy of denying narcotic medication to pretrial detainees.

To the extent Plaintiff bases his claim on an alleged policy of failing to train employees, the Court denies his claim.  A municipality's culpability for rights deprivation is "at its most tenuous where a claim turns on a failure to train."[74]  When a plaintiff challenges the adequacy of a municipal training program, the deficiencies must be "so gross or so pervasive that they can 'justifiably be said to represent city policy.'"[75]  Therefore, a plaintiff "must identify a *specific* deficiency in the entity's training program closely related to his ultimate injury."[76]

There are two ways a plaintiff can successfully plead deliberate indifference in the failure to train context.  First, the plaintiff may allege a pattern of constitutional violations committed by the untrained employees.[77]  Second, alleging "a pre-existing pattern of violations is *only unnecessary*" when "the unconstitutional consequences of failing to train are 'highly predictable' and 'patently obvious.'"[78]  Plaintiffs rarely succeed when relying on the latter method because single-incident failure-to-train claims prevail only in a "narrow range of circumstances."[79]

---

[74] *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

[75] *Lynch v. Bd. of Cnty. Comm'rs*, 786 F. App'x 774, 785 (10th Cir. 2019) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

[76] *Huff v. Reeves*, 996 F.3d 1082, 1093 (10th Cir. 2021) (quoting *Keith v. Koerner*, 843 F.3d 833, 838–39 (10th Cir. 2016)) (emphasis added).

[77] *George v. Beaver Cnty.*, 32 F.4th 1246, 1253 (10th Cir. 2022).

[78] *Id.* at 1253 (emphasis added).

[79] *Id.*

The Amended Complaint in this case does not satisfy either of these pleading requirements. Plaintiff only generally alleges that VitalCore failed to train its employees.  He does not allege any specific deficiencies in VitalCore's training that would have prevented his pain.  Furthermore, none of Plaintiff's allegations demonstrate a pattern of constitutional violations committed by untrained employees. Nor do they demonstrate that the consequences of failing train are highly predictable or patently obvious.  Therefore, Plaintiff does not plausibly allege that VitalCore was deliberately indifferent to its employees training.

VitalCore's Motion to Dismiss is denied as to VitalCore's argument that Plaintiff does not state an official policy of VitalCore.  It is granted as to Plaintiff's failure to train allegations.

## D.      Defendants' Motions to Dismiss Plaintiff's § 1985 Claim

Plaintiff alleges a claim against all Defendants for conspiracy under 42 U.S.C. § 1985, which the Court construes as a claim under subsection (3) of the statute for conspiracies that deprive a person of certain rights or privileges:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . or cause to be done, any act in furtherance of the object of such conspiracy, . . . the party so injured or deprived may have an action for the recovery of damages. . . .

To state a claim for violation of § 1985, a plaintiff must allege: "(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom."[80]  Although this claim can cover conspiracies involving private actors, "there must be some racial, or perhaps otherwise class-based,

---

[80] *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)).

invidiously discriminatory animus behind the conspirators' action."[81]  Plaintiff fails to allege any racial or class-based invidiously discriminatory animus behind Defendants' conduct.  Therefore, Plaintiff fails to state a claim under § 1985(3).

Because Plaintiff proceeds pro se, the Court will reasonably attempt to read the Amended Complaint to state a valid claim—if possible—despite Plaintiff's failure to cite proper legal authority.[82]  Under § 1983, the Tenth Circuit recognizes a claim for civil conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law.[83]  However, even if the Court were to read Plaintiff's conspiracy claim as one falling under § 1983 instead of § 1985, the claim still fails.

To recover under a § 1983 conspiracy theory, a plaintiff must plead the existence of a conspiracy and the deprivation of constitutional rights.[84]  "An actionable conspiracy 'requires at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective.'"[85]  "A plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants because conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."[86]  Here, Plaintiff simply alleges that Defendants conspired with each other to use VitalCore's policies in violation of his civil rights.  He does not allege an agreement among the Defendants to deprive

---

[81] *Griffin*, 403 U.S. at 102; *see also United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 838 (1983) (holding that § 1985(3) does not apply to "conspiracies motivated by economic or commercial animus").

[82] *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (citing *Hall*, 935 F.2d at 1110).

[83] *See Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir.1990).

[84] *Banks v. Opat*, 814 F. App'x 325, 337 (10th Cir. 2020) (quoting *Dixon*, 898 F.2d at 1449).

[85] *Id*. (quoting *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010)).

[86] *Id*. (quoting *Brooks*, 614 F.3d at 1228) (internal quotations and brackets omitted).

him of Tramadol and subject him to undue pain.  Therefore, Plaintiff does not sufficiently plead the existence of a conspiracy and his claim fails.  The Court grants Defendants' Motions to Dismiss this claim.

### IV.    Conclusion

The Court grants in part and denies in part each Defendants' Motion.  Plaintiff's claim against Defendants for conspiracy, whether brought under § 1985 or § 1983, is dismissed. Plaintiff's § 1983 claim against Defendant Staley in her individual capacity is dismissed. Plaintiff's § 1983 claim against VitalCore for failure to train is dismissed.  Plaintiff's remaining claims against Defendants survive.

**IT IS THEREFORE ORDERED THAT** Defendants' Motions to Dismiss (Docs. 11, 14, 17, 20, 23, and 26) are **GRANTED IN PART AND DENIED IN PART**.  Defendant Staley, sued as Tracy (lnu),  remains in the case in her official capacity only.

**IT IS SO ORDERED**.

Dated this 9th day of May, 2024.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE