**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

MICHAEL A. SCRIVEN,

      *Plaintiff,*

 vs.

                                       Case No. 22-3282-EFM-RES

VITALCORE HEALTH
STRATEGIES, LLC (named as "Vital Core,
LLC"), et al.,

      *Defendants.*

**MEMORANDUM AND ORDER**

Pro se Plaintiff Michael Scriven brings this action against Defendants VitalCore Health

Strategies, LLC (incorrectly named as "Vital Core LLC"), Jennifer Ehrlich, Tracy Staley, Dr.

Harold Stopp, Ryan Fickle, and Dr. John Tomarchio (incorrectly named as "Demarco") for alleged

violations of his constitutional rights while in custody at the Sedgwick County Jail ("SCJ").

Specifically, Plaintiff asserts that Defendants violated his Fourteenth Amendment rights when they

denied him narcotic pain medication for his chronic health conditions. This matter comes before

the Court on Defendants' Motion for Summary Judgment (Doc. 130) and Plaintiff's Motion to

Declare Defendants' Expert Report Inadmissible (Doc. 147).[1] For the following reasons, the Court

---

[1] Plaintiff filed a second Motion to Declare Defendants' Expert Report Inadmissible at Doc. 155. However, this second motion appears to be a typed copy of the Motion to Declare Defendant's Expert Report Inadmissible at Doc. 147. Thus, the Court will address these motions as one.

grants Defendants' Motion for Summary Judgment and denies Plaintiff's Motion to Declare Defendants' Expert Report Inadmissible.

## I.  Factual and Procedural Background[2]

### A.  Plaintiff's Medical Care for His Chronic Conditions

Plaintiff was incarcerated in SCJ as a pretrial detainee in October 2020. He suffers from a number of chronic health conditions, including: (1) a prosthetic pelvis; (2) plates in his right and left acetabulum; (3) a rod in his right femur; (4) plates in his right rib; (5) a traumatic brain injury; (6) neuropathy/paralysis; (7) tendinopathy; (8) arthritis; (9) severe joint degenerative disease; (10) dystrophic calcification; and (11) heterotropic ossification. Not all of Plaintiff's conditions were diagnosed before he was incarcerated. Some were the result of Plaintiff's altercations with other inmates at SCJ.

From the time of his incarceration through August 2021, Plaintiff tried several different pain medications for his health conditions. Plaintiff, however, repeatedly complained about his pain, and so on August 16, 2021, Defendant Dr. Stopp prescribed him tramadol. In November 2021, one of Plaintiff's healthcare providers, Travis Nickelson, documented that Plaintiff was experiencing soft tissue calcification disease. He consulted with Dr. Stopp and both agreed that Plaintiff's tramadol prescription should be increased to three times a day. Plaintiff was subsequently sent to outside orthopedic specialists, one of whom increased Plaintiff's dosage of tramadol from 50 mg to 100 mg three times a day. Nickelson approved the specialist's

---

[2] In accordance with summary judgment procedure, the facts are set forth in the light most favorable to the nonmoving party.

recommendation. Thus, at the time of the events at issue here, Plaintiff was receiving the increased dosage of tramadol three times a day.

In July 2022, Defendant VitalCore became the medical provider for SCJ. Plaintiff continued to receive tramadol until September 6, 2022, when he was taken off the medication and offered Tylenol and ibuprofen instead. Plaintiff complained to Defendant Tracey Staley, an advanced practice registered nurse for VitalCore, about the effect of stopping the medication on his health and the fact that NSAIDs, such as ibuprofen, hurt his stomach. That same day, Nurse Staley consulted with Dr. Stopp and Defendant Ryan Fickle, the Health Services Administrator for VitalCore. They agreed that Plaintiff should stop taking tramadol but that he should be tapered off the medicine to decrease withdrawal side effects. Nurse Staley then offered Plaintiff Tylenol and ibuprofen with famotidine to prevent any gastrointestinal issues.

On or about September 22, 2022, Plaintiff met with Defendant Ehrlich, Senior Vice President of Operations for VitalCore, and Defendant Dr. Tomarchio, Assistant Chief Medical Officer for VitalCore. They explained why he was being taken off tramadol. Specifically, they described the effects of opioids on dopamine receptors in the brain and their impact on individuals with a history of substance abuse, especially when taken long-term. Plaintiff was previously treated for substance abuse due to the use of cocaine and methamphetamines. Unwilling to accept their reasoning, Plaintiff became argumentative and insisted he be allowed tramadol for pain management. Instead of acquiescing to Plaintiff's demands, Ehrlich and Dr. Tomarchio told Plaintiff that they would discuss adding a muscle relaxer for his muscle spasms with Plaintiff's provider.

Plaintiff continued to complain about his lack of tramadol in November 2022. On November 8, 2022, Nurse Staley met with Plaintiff to discuss possible bone growth into his rectum

and Plaintiff's continued requests for tramadol. Nurse Staley's notes from that meeting state that Plaintiff refuses to take NSAIDs, Tylenol, or famotidine because they are not effective and hurt his liver or kidneys. She noted, however, that Plaintiff's labs did not indicate a liver or kidney injury. She also noted that Plaintiff refused to take Cymbalta or nortriptyline because he was previously informed it would cause side effects on his traumatic brain injury. Again, however, there was no evidence of this in Plaintiff's record. Nurse Staley reminded Plaintiff of "company policy, provider's right not to prescribe opioids, his pre-disposition to substance abuse and Dr. Tomerchio [sic] recommendations." She further noted that Plaintiff was prescribed alternative evidence-based care for his pain, but he continues to refuse medication with "no objective findings for contraindication."

Nurse Staley met with Plaintiff again on November 15, 2022. Her notes regarding that meeting indicate that she had been discussing therapeutic options with Dr. Tomarchio, and she conveyed these options to Plaintiff. She also offered Plaintiff an alternative anti-depressant, Effexor, which he declined. Plaintiff continued to decline ibuprofen and famotidine, asserting that the famotidine caused bloating and discomfort. Plaintiff agreed to try Celebrex on a trial basis.

In January 2023, Dr. Curt Meinecke became Plaintiff's medical provider and authorized a new tramadol prescription. Plaintiff continued to receive tramadol from Dr. Meinecke until he was transferred to state prison in April 2025.

**B.     The Litigation**

Plaintiff filed this suit on October 31, 2022. He asserts a claim under 42 U.S.C. § 1983 for violation of his Fourteenth Amendment rights. He alleges that Defendants were deliberately indifferent to his serious medical needs when they refused to fill his tramadol prescription in favor of other less efficacious pain medications.  He sues Defendant Nurse Staley in her official capacity

and Defendants Ehrlich, Dr. Tomarchio, Dr. Stopp and Fickle in their individual capacities. Plaintiff also asserts a *Monell*[3] claim against Defendant VitalCore, which alleges that VitalCore implemented a policy prohibiting inmates at SCJ from receiving narcotic pain medication.

During discovery, Defendants retained Dr. Thomas Fowlkes to provide an opinion regarding the medical necessity of the care and treatment requested by Plaintiff. Dr. Fowlkes opined:

> In summary, each of these providers used appropriate professional medical judgment to formulate a treatment plan for a difficult patient with chronic pain syndrome who did not have any pathology that could be reversed with surgery or other intervention. Plaintiff was not going to be cured of his heterotopic ossification or the other consequences of his prior traumas. He was going to have to learn to live with his chronic pain. Many providers have determined that the risks of chronic opioid therapy outweigh the benefits in these types of patients.

Dr. Fowlkes also opined on Plaintiff's prior drug addiction stating:

> Plaintiff had a past medical history that included SUD [substance abuse disorder] of at least cocaine. Persons with a history of SUD are at a particularly heightened risk of subsequent addiction potential if prescribed chronic opiates. The medical literature is clear that use of chronic opioid therapy is relatively contraindicated in patients with a history of SUD. Particular caution should be used before prescribing any opiates to individuals with a history of SUD.

Finally, Dr. Fowlkes discussed Plaintiff's allegations as to his deliberate indifference claim and concluded: "It is an appropriate practice in a correctional setting, as in other settings, to limit the amount and duration of opioid medications given for chronic non-cancer pain. It is especially so given the additional security risks in a correctional environment."

Plaintiff did not produce an expert witness report under Federal Rule of Civil Procedure 26(a)(2)(B). In his Rule 26 Retained Experts and Disclosures he states "[t]he plaintiff is unable to

---

[3] *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658 (1978).

retain any experts so no report is needed. There is going to be medical professionals who testify on behalf of the plaintiff including defendants."

Defendants have moved for summary judgment on Plaintiff's § 1983 claim, to which Plaintiff filed a response. Additionally, Plaintiff filed a Motion to Declare Defendants' Expert Report Inadmissible. These motions are ripe for the Court's ruling.

## II.    Plaintiff's Motion to Declare Defendants' Expert Report Inadmissible

## A.    Legal Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Under this rule, the Court must first "determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion."[4] If so, then relevant expert opinion testimony is admissible if: (1) such testimony is based upon sufficient facts or data; (2) it is a product of reliable principles and methods; (3) the witness applied the principles and methods reliably to the facts of the case; and (4) the testimony is helpful to the trier of fact.[5] As these requirements demonstrate, the Court is charged as a gatekeeper to admit only expert testimony that is relevant and reliable.[6] This is a flexible inquiry specific to the facts of the case at hand.[7] The burden is on the party offering the expert testimony to show that it is admissible.[8] That party,

---

[4] *Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1282 (10th Cir. 2018) (internal quotation marks and citation omitted).

[5] Fed. R. Evid. 702.

[6] *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

[7] *Id.* at 594; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (rejecting formulaic application of reliability factors discussed in *Daubert* because "[t]oo much depends upon the particular circumstances of the particular case at issue").

[8] *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (citation omitted).

however, "need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community[, only] that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements."[9]

The Court may, but is not required to, conduct a *Daubert* hearing to fulfill this role.[10] Here, neither party has requested a *Daubert* hearing, and after reviewing the parties' briefs, the Court concludes that the Motion can be decided without a *Daubert* hearing.

**B.    Analysis**

Plaintiff asserts eight arguments as to why the Court should declare Dr. Fowlkes' expert report inadmissible. First, Plaintiff argues that Dr. Fowlkes is not qualified because he is not an "orthopedic," "nerve specialist," or "pain management specialist." However, Dr. Fowlkes is not opining on the type of pain medication suitable for Plaintiff's chronic pain. Instead, he is opining on the appropriate standard of care for managing chronic pain in a correctional setting, and Dr. Fowlkes's resume shows that he is qualified to opine on this issue. He is a "correctional medicine physician with approximately 25 years of experience," board certified in addiction medicine, and a Certified Correctional Healthcare Professional-Physician. Because Dr. Fowlkes's expertise is directly relevant to the issue at hand, the Court finds Dr. Fowlkes qualified to render an opinion in this case.

---

[9] *Windham v. Circuit City Stores, Inc.*, 420 F. Supp. 2d 1206, 1211 (D. Kan. 2006) (quoting *Mitchell v. Gencorp. Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)); *see also Foster v. USIC Locating Servs., LLC*, 2018 WL 3757567, at *1 (D. Kan. Aug. 7, 2018) ("[R]ejection of expert testimony is the exception rather than the rule.") (citing Fed. R. Evid. 702 advisory committee's notes).

[10] *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2020 WL 1164869, at *3 (D. Kan. Mar. 10, 2020) (citing *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000)).

Second, Plaintiff argues that Dr. Fowlkes's method is not a sound medical opinion because the x-ray images he looked at are covered in gray and white static. Although these images may be low quality, Dr. Fowlkes reviewed the entire medical record, including the official radiology reports associated with the x-ray images. Thus, contrary to Plaintiff's argument, Dr. Fowlkes's methodology is not flawed, and the Court will not declare it inadmissible on this basis.

Third, Plaintiff argues that Dr. Fowlkes improperly relied upon third-party hearsay statements in Plaintiff's medical records when crafting his expert report. However, an expert's reliance on hearsay does not necessarily render the expert's opinion unreliable. Federal Rule of Evidence 703 permits an expert to base an opinion on facts "that the expert has been made aware of or personally observed," even if those facts are inadmissible, so long as they are of a type reasonably relied upon by experts in the particular field.[11] Experts in correctional medicine reasonably rely upon medical records to form opinions about the standard of care. Thus, Dr. Fowlkes's use of Plaintiff's medical records does not render his report unreliable.

Fourth, Plaintiff claims that Dr. Fowlkes improperly diagnosed Plaintiff with a substance abuse disorder. Plaintiff argues that Dr. Fowlkes did not perform the 11-prong test in the American Psychiatric Association's Diagnostic and Statistical Manual of Disorders to determine whether he did, in fact, have a substance abuse disorder. This argument misrepresents Dr. Fowlkes's report. Dr. Fowlkes did not make a new diagnosis regarding substance abuse. Instead, he relied on Plaintiff's own reported history and prior medical records to document that Plaintiff had a

---

[11] Fed. R. Evid. 703; *United States Fid. & Guar. Co. v. Sulco, Inc.*, 171 F.R.D. 305, 307 (D. Kan. 1997) (citation omitted).

substance abuse disorder in the past. An expert is not required to have first-hand knowledge of the facts or conduct his own diagnostic exam to form an opinion on the patient's history.[12]

In his fifth argument, Plaintiff asserts that Dr. Fowlkes falsely denied the existence of a VitalCore policy in his report. Plaintiff asserts that the medical records show that Defendant Staley used a VitalCore policy to deny Plaintiff's medication. In response, Defendants argue that Dr. Fowlkes did not deny the existence of a VitalCore policy, instead he opined that he saw no VitalCore policy or procedure that precluded the use of opioid medication. This is a factual dispute between the parties. Plaintiff's disagreement with Dr. Fowlkes's conclusion in his expert report goes to the weight of Dr. Fowlkes's testimony. It is not grounds for exclusion.

In his sixth and seventh arguments, Plaintiff disagrees with two different factual statements in Dr. Fowlkes's report. In his sixth argument, Plaintiff takes issue with Dr. Fowlkes' statement that Plaintiff fractured his hand after hitting a door. And in his seventh argument, Plaintiff argues that Dr. Fowlkes should have provided the name of the physicians who previously terminated Plaintiff as patient due to his behavior and demeanor. These are both tangential factual issues that are irrelevant to the issues before the Court. Plaintiff's disagreement with Dr. Fowlkes's statements does not render Dr. Fowlkes' opinion on the central issues of the case unreliable.

In Plaintiff's final argument, he claims that Dr. Fowlkes relied on medical records that were falsified by Defendant Staley. Plaintiff claims that on November 15, 2022, Nurse Staley created a record at a time later than her chart reflects. This is a misreading of the record. The note Dr.

---

[12] *See United States v. Tsosie*, 791 F. Supp. 2d 1099, 1110 (D.N.M. 2011) ("[E]xperts are not required to have first hand knowledge, because expert witnesses do not need to have personal knowledge of the underlying facts; they may testify to opinions based on facts perceived by or made known to the expert at or before the hearing." (internal quotation marks and citation omitted)).

.

Fowlkes relies upon in Plaintiff's medical record specifically states "LATE ENTRY: Pt seen last week 11/8/22 . . . ." Although the note was entered on November 15, 2022, it reflects that the encounter occurred on November 8, 2022.  Thus, the medical record was not falsified. In any event, criticisms regarding the medical providers or the databases on which the expert relies go to the weight, and not the admissibility of the expert's opinion.[13] Accordingly, this argument is not an adequate basis under which the Court may declare Dr. Fowlkes's report inadmissible.

Overall, Plaintiff fails to present a credible challenge to Dr. Fowlkes's qualifications or methodology. His arguments mostly amount to a disagreement with underlying evidence. This disagreement goes to the weight of the testimony, not its admissibility, and is the proper subject of cross-examination. Accordingly, the Court denies Plaintiff's Motion to Declare Defendants' Expert Report inadmissible.

### III.    Defendants' Motion for Summary Judgment

### A.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[14] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[15] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the

---

[13] *McGraw v. Cobra Trucking, Inc*., 569 F. Supp. 3d 1089, 1101 (D. Colo. 2021).

[14] Fed. R. Civ. P. 56(a).

[15] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

claim.[16] If the movant carries its initial burden, the nonmovant may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[17] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[18] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[19]

**B.    Analysis**

Defendants seek summary judgment on the basis that Plaintiff does not submit sufficient evidence for a reasonable jury to find that they acted with deliberate indifference to his serious medical needs. In the alternative, Defendants argue that summary judgment is warranted because Plaintiff does not produce an expert witness report to prove his claim.

**A.    Plaintiff's § 1983 Claim for Deliberate Indifference**

To prove a § 1983 claim, the plaintiff must show that the defendant, while acting under color of state law, caused the plaintiff to be deprived of a right secured by the Constitution or the laws of the United States.[20] Section 1983 claims fall into two categories: individual capacity claims and official capacity claims.[21] Individual capacity claims sue the state actor, *i.e.*, the officer or

---

[16] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986)).

[17] *Id*. (citing Fed. R. Civ. P. 56(e)).

[18] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).

[19] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[20] *See* 42 U.S.C. § 1983; *Torres v. Madrid*, 592 U.S. 306, 310 (2021).

[21] *Cheatham v. Dedeke*, 2026 WL 873910, at *3 (D. Kan. Mar. 31, 2026).

prison official, directly.[22] These claims suggest that the individual defendant personally participated in the constitutional violation or failed to supervise others who violated the plaintiff's constitutional rights.[23] Official capacity claims sue the entity responsible, either by naming that entity directly or by suing the agent of the entity in his or her official capacity.[24] To prevail on an official capacity claim, the plaintiff must show that the plaintiff's harm was caused by the constitutional violation committed by the entity's agent[25] and that the entity's custom, policy, or practice caused the unconstitutional conduct.[26] Plaintiff asserts an individual capacity claim against Defendants Ehrlich, Dr. Tomarchio, Dr. Stopp, and Nurse Ehrlich and an official capacity claim against Nurse Staley.

Plaintiff's § 1983 claim alleges that Defendants were deliberately indifferent to his serious medical needs. A deliberate indifference claim is rooted in the Eighth Amendment, which prohibits "cruel and unusual punishment." "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."[27] As a pretrial detainee, Plaintiff is afforded this protection under the Due Process Clause of the Fourteenth Amendment, which requires that pretrial detainees "are entitled to the same degree of

---

[22] *Id*.

[23] *Id*. (citing *Cuervo v. Sorenson*, 112 F.4th 1307, 1314 (10th Cir. 2024); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)).

[24] *Id*.

[25] *Id*. (citing *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1223 (10th Cir. 2006)).

[26] *Id*. (citing *Monell*, 436 U.S. at 694-95).

[27] *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment."[28]

A deliberate indifference claim contains "both an objective and a subjective component" with respect to each defendant.[29] In the objective analysis, the deprivation must be "sufficiently serious."[30] "A medical condition is 'sufficiently serious' when 'the condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' "[31] To satisfy the subjective component, Plaintiff must show that the "prison official knows of and disregards an excessive risk to inmate health or safety."[32] "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[33] Further, "a complaint that a physician has been negligent in diagnosing or treating a medical condition" is not an actionable claim under the Eighth or Fourteenth Amendment.[34] And "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."[35]

The Court will first address Plaintiff's deliberate indifference claim against Defendants Ehrlich, Dr. Tomarchio, Fickle, and Dr. Stopp in their individual capacities. Then, it will address

---

[28] *Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992) (citation omitted).

[29] *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

[30] *Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1044 (10th Cir. 2022).

[31] *Id.* (quoting *Al-Turki v. Robinson*, 762 F.3d 1188, 1192–93 (10th Cir. 2014)).

[32] *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (quoting *Sealock*, 218 F.3d at 1209).

[33] *Id.* (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

[34] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

[35] *Id.*

Plaintiff's deliberate indifference claim against Nurse Staley in her official capacity. Finally, the Court will address Plaintiff's *Monell* claim against Defendant VitalCore.

### 1.    *Defendant Ehrlich*

Plaintiff asserts that Defendant Ehrlich, in her role as Senior Vice-President of Operations for VitalCore, created and implemented policies to interfere with his pain medication and refused to provide Plaintiff the medication he was prescribed by his doctors. He also asserts that Ehrlich ignored his pain complaints and acquiesced in Defendant's Staley's provision of ibuprofen and Tylenol instead of tramadol. Because Plaintiff does not assert that Defendant Ehrlich administered medical care to him, his claim hinges on a theory of supervisory liability.

Supervisory liability under § 1983 is distinct from respondeat superior.[36] A defendant supervisor is only liable if a plaintiff can show an "affirmative link exists between the constitutional deprivation and either the [officer's] personal participation, his exercise of control or direction, or his failure to supervise."[37]  The elements of a supervisor liability claim under §1983 are: "(1) personal involvement; (2) sufficient causal connection; and (3) culpable state of mind."[38] At issue here is the third element—whether Ehrlich acted with a culpable state of mind.

The third element of supervisor liability requires the plaintiff to show that the defendant took the alleged actions with the requisite state of mind.[39] Precisely what state of mind is required

---

[36] *Dodds v. Richardson*, 614 F.3d 1185, 1194 (10th Cir. 2010).

[37] *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (internal quotation marks and citation omitted).

[38] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Dodds*, 614 F.3d at 1195).

[39] *Id*. at 769.

for individual liability depends on the type of claim the plaintiff brings.[40] Because Plaintiff asserts a deliberate indifference claim, he must show therefore that Ehrlich knew of and disregarded an excessive risk to Plaintiff's health and safety.[41]

Plaintiff does not meet his burden here. Ehrlich is not a doctor, and thus she could only rely on Plaintiff's medical providers as to the type of pain medication Plaintiff should be receiving. Furthermore, her actions do not show that she ignored Plaintiff's pain. Shortly after Plaintiff began complaining about the denial of tramadol, Ehrlich and Dr. Tomarchio met with Plaintiff to discuss his health conditions and his pain. During that meeting, she and Dr. Tomarchio explained that opioids, such as tramadol, are not appropriate long-term pain medication for inmates, like Plaintiff, with a history of substance abuse. They also indicated that they would provide Plaintiff with a muscle relaxer for his spasms. Moreover, although Plaintiff insisted that he needed tramadol to control his pain, Ehrlich's meeting notes indicate otherwise. She noted that Plaintiff ambulated without difficulty and stepped up to sit on the exam table without any pain complaints.

In sum, Ehrlich did not knowingly disregard Plaintiff's pain but rather listened to his complaints and relied on the medical providers' assessment as to why Plaintiff should not be on tramadol. Accordingly, Ehrlich did not have the necessary subjective state of mind with respect to Plaintiff's medical treatment. The Court grants summary judgment in her favor on Plaintiff's § 1983 claim.

2.    *Dr. Tomarchio*

---

[40] *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Dodds*, 614 F.3d at 1204-05).

[41] *Strain v. Regalado*, 977 F.3d 984, 990 (10th Cir. 2020) (quoting *Mata*, 427 F.3d at 751).

In the Amended Complaint, Plaintiff asserts a supervisory liability claim against Dr. Tomarchio based on an official policy or custom. Plaintiff now asserts that Dr. Tomarchio is not liable solely under a supervisory liability theory but also based on "his own personal involvement and deliberate indifference." Because both theories of liability require Plaintiff to show that Dr. Tomarchio knew of and disregarded a risk to Plaintiff's health and safety, the Court addresses them jointly.

Plaintiff argues that Dr. Tomarchio knew of and disregarded his pain complaints. Plaintiff further argues that Dr. Tomarchio's response to his complaints was not medically reasonable, and because Dr. Tomarchio prescribed him Baclofen for his muscle spasms, he could have prescribed medications other than Tylenol and ibuprofen to treat his pain.

The Court agrees that Dr. Tomarchio was aware of Plaintiff's many complaints of pain, but taken alone, this awareness is not sufficient to show a knowing and excessive disregard for Plaintiff's health. As noted above, Dr. Tomarchio met with Plaintiff to discuss his pain complaints and explain why opioid medications are not suitable to treat chronic pain. He also offered Plaintiff additional pain medication, in addition to ibuprofen and Tylenol, to treat his chronic conditions. The medical records show that Nurse Staley met with Dr. Tomarchio to discuss alternative treatment methods and that after those discussions, Plaintiff was offered Celebrex and other anti-depressants, such as effexor, to treat his pain. Plaintiff, however, complained about and rejected all pain medications that were not tramadol.

Plaintiff's insistence for tramadol over all other pain medications is a disagreement with his providers as to the proper pain medication. Both the Tenth Circuit and this District have held

that such disagreement does not amount to deliberate indifference under the Eighth Amendment.[42]

For example, *May v. Bunting*,[43] a state prisoner alleged that he was denied medical care while he was a pre-trial detainee because his medical provider refused to give him oxycodone.[44] In refusing the medication, his medical provider informed him that oxycodone was not an effective long-term pain medication and offered other options for pain management.[45] Judge Lungstrum dismissed the plaintiff's Eighth Amendment claim, finding that the refusal to provide the plaintiff's preferred pain medication was not deliberate indifference but a disagreement with the doctor's medical judgment.[46] Judge Lungstrum also observed that other jurisdictions have noted the dangers in prescribing narcotics in a criminal setting and found Tylenol and ibuprofen to be suitable replacements.[47]

Like the plaintiff in *May*, Plaintiff's allegations do not show a complete lack of medical care but rather a disagreement with Dr. Tomarchio as to his preferred pain medication. Dr.

---

[42] *See, e.g.*, *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (noting that the plaintiff's disagreement with the type of medication provided does not indicate a lack of treatment but a disagreement with the doctor's medical judgment); *Hood v. Prisoner Health Servs., Inc.*, 180 F. App'x 21, 25 (10th Cir. 2006) (finding no constitutional violation where appropriate non-narcotic medication was prescribed instead of the narcotic medication the plaintiff received before incarceration); *Carter v. Troutt*, 175 F. App'x 950, 951-52 (10th Cir. 2006) (finding no constitutional violation where the prison doctor refused to prescribe a certain pain medication and the inmate refused to be examined for follow-up treatment and refused all examination unless he received his desired pain medicine).

[43] 2023 WL 2951592 (D. Kan. Apr. 14, 2023).

[44] *Id*. at *1.

[45] *Id*. at *5.

[46] *See id*. (citing *Gee*, 627 F.3d at 1192; *Hood*, 180 F. App'x at 25; *Carter*, 175 F. App'x at 951-52).

[47] *See id*. at *6 (citing *Malouf v. Turner-Foster*, 2013 WL 209280, at *5-6 (D. N.J. Jan. 17, 2013) (finding no Eighth Amendment violation where the doctors tapered and discounted the plaintiff's oxycodone prescription because narcotics are used for short term relief and not for chronic pain); *Thomas v. Wolf*, 832 F. App'x 90, 93 (2d Cir. 2020) (finding that substituting ibuprofen for more powerful and addictive pain medicine was not an excessive risk to inmate health and safety); *Lockett v. Bonson*, 937 F.3d 1016, 1024-25 (7th Cir. 2019) (noting that the nurse practitioner considered the inmate's past substance abuse, the risks associated with opioid use and substance abuse in prison and the high amount of oxycodone prescribed).

Tomarchio did not deny Plaintiff all pain medication. Instead, he approved other medications that are more suitable for management of chronic pain in inmates with a history of substance abuse.

The reasonableness of Dr.Tomarchio's actions is supported by Dr. Fowlkes's expert opinion. In his expert report, Dr. Fowlkes explained that in the last decade, medical providers have become more cautious in prescribing narcotics to long-term patients with a history of substance abuse and chronic conditions. According to Dr. Fowlkes, physicians "are entitled to and indeed are expected to use their medical decision-making skills to determine what is the best treatment for an individual patient at a particular time[,]" and that the treatment plan for Plaintiff was completely appropriate and within the standard of care. Accordingly, the Court finds that Plaintiff fails to show a genuine issue of material fact as to whether Dr. Tomarchio knew of and disregarded a substantial risk to Plaintiff's health. The Court grants summary judgment in favor of Dr. Tomarchio on Plaintiff's § 1983 claim.

### 3. Ryan Fickle

In his Amended Complaint, Plaintiff asserts a claim for supervisory liability against Ryan Fickle alleging that she acquiesced to Nurse Staley's unconstitutional behavior and implemented and enforced a policy denying him effective treatment. Fickle seeks summary judgment on the basis that Plaintiff cannot show she personally participated in the violation or that she acted with a culpable state of mind.[48]

The only evidence regarding Fickle's actions is that she was present at the meeting with Dr. Stopp and Nurse Staley on September 6, 2022, where they agreed that Plaintiff would no longer

---

[48] *See Schneider*, 717 F.3d at 767 (stating that a plaintiff must show the following elements "to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation, and (3) state of mind.").

be prescribed tramadol. Even assuming this evidence creates a genuine issue of material fact as to Fickle's personal participation, it is not sufficient to show that Fickle acted with a culpable state of mind. As noted above, a disagreement between an inmate and a medical provider as to a preferred pain medication does not amount to deliberate indifference.[49] Furthermore, the medical records from that meeting show that as a result of the meeting, Plaintiff was tapered off tramadol instead of being denied it outright and offered alternative medications of duloxetine and nortriptyline. These are responsive and appropriate actions. Thus, the Court grants summary judgment in Defendant's Fickle's favor.

### 4.    Dr. Stopp

Plaintiff also asserts a supervisory liability claim against Dr. Stopp alleging that he acquiesced in Nurse Staley's behavior and implemented and enforced a policy denying him medical treatment. Like Defendant Fickle, Dr. Stopp seeks summary judgment on the basis that Plaintiff has no evidence that he was personally involved in the alleged violation or acted with a culpable state of mind.

In his response, Plaintiff argues that outside orthopedic specialists previously prescribed tramadol for Plaintiff's pain, that Dr. Stopp knew of these prescriptions and approved of them, and that Dr. Stopp forced Nurse Staley to give him Tylenol and ibuprofen even though he knew it would not be effective in treating his pain.

Like the claim against Defendant Fickle, the only evidence concerning Dr. Stopp's denial of tramadol is limited to his consultation with Nurse Staley on September 6, 2022, where they

---

[49] *See Savage v. Troutt*, 2016 WL 8711398, at *7 (W.D. Okla. Aug. 12, 2016) (finding no Eighth Amendment violation by a prison doctor who refused to prescribe the same pain medicine as prescribed by the plaintiff's specialist).

agreed Plaintiff's tramadol prescription should be tapered. The Tenth Circuit has held that "the subjective component [of the deliberate indifference test] is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment."[50] Here, Dr. Stopp exercised his considered medical judgment in tapering Plaintiff off tramadol in favor of other non-narcotic medications.

Plaintiff relies heavily on the fact that outside orthopedists prescribed him tramadol. But, a prison doctor is free to exercise their own independent judgment and offer alternative pain medication where legitimate penological concerns, such as substance abuse, are at play.[51] Furthermore, as Dr. Fowlkes opined, "correctional healthcare providers are not obligated to, nor do we always, follow the recommendations of these outside specialists who are not privy to all the details." Here, Plaintiff had a known history of substance abuse. Dr. Stopp's decision to taper him off the medication in light of this abuse is not actionable under the Eighth Amendment.[52] Accordingly, the Court grants summary judgment to Dr. Stopp on Plaintiff's § 1983 claim.

### 5. Nurse Staley

Plaintiff asserts a deliberate indifference claim against Nurse Staley in her official capacity. To prove an official capacity claim under § 1983, Plaintiff must show that (1) Nurse Staley committed a constitutional violation and (2) Vital Core's policy caused the unconstitutional conduct.[53] Nurse Staley seeks summary judgment on the basis that Plaintiff's claim fails as to both

---

[50] *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006).

[51] *See Todd v. Bigelow*, 497 F. App'x 839, 841 (10th Cir. 2012) (holding that terminating a prescription due to suspected drug abuse reflects "a legitimate penological interest in the prevention of drug abuse.").

[52] *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir.2002) ("[A] medical difference of opinion . . . is not actionable under the Eighth Amendment.").

[53] *Cheatham*, 2026 WL 873910, at *3 (citing *Prince*, 28 F.4th at 1048-49).

elements. First, she argues that there is no evidence to support the existence of a VitalCore policy or custom denying narcotic pain medication to inmates. And second, she argues that Plaintiff cannot show she was deliberately indifferent to his serious medical needs.

As to the existence of a VitalCore policy or custom, Plaintiff submits evidence from his medical records in which Nurse Staley specifically refers to a VitalCore policy. Specifically, on September 6, 2022, Nurse Staley noted that she consulted with Dr. Stopp concerning Plaintiff's tramadol use "secondary to company policies related to opioid (opioid mimic med)." She further noted that during a discussion with Dr. Stopp and Fickle, "it was agreed tramadol would no longer be prescribed chronically. Pt [Patient] brought back to the facility and explained the need to transition off tramadol per VC policy and physician order." When this evidence is viewed in the light most favorable to Plaintiff, it indicates that VitalCore may have had a policy concerning an inmate's use of opioid medication. Thus, the Court finds that there is a genuine issue of material fact as to whether VitalCore had a policy prohibiting the administration of narcotic medication to inmates.

Even in light of this finding, Plaintiff's claim fails because there is no evidence Nurse Staley consciously disregarded a substantial risk of harm to Plaintiff. The undisputed facts show that Staley's actions were responsive and appropriate. After she informed Plaintiff that he could no longer receive tramadol, she agreed to taper him off the medicine so he did not experience withdrawal symptoms. She prescribed him famotidine to address the side effects Plaintiff complained of regarding ibuprofen. When Plaintiff continued to complain, she met with Dr. Tomarchio and Ehrlich to discuss alternative treatment options. In November 2022, Nurse Staley documented that she had offered Plaintiff Tylenol, ibuprofen, Cymbalta, nortriptyline, and effexor,

all of which he refused. She also indicated that she discussed therapeutic options for Plaintiff with Dr. Tomarchio.

Plaintiff's insistence that he receive tramadol is further belied by the medical records from November 2022. Nurse Staley document that even after Plaintiff was weaned off tramadol, Plaintiff was able to ambulate without difficulty and with limited use of his cane. Overall, Plaintiff's claim rests on his fundamental belief that he needs tramadol for pain management. But this belief is not enough to show that Nurse Staley subjected him to cruel and unusual punishment.[54]

Plaintiff argues that Staley's conduct was unconstitutional because she persisted in a course of treatment known to be ineffective and cites two Seventh Circuit decisions—*Greeno v. Daley*[55] and *Berry v. Peterman*[56]—in support of his argument. But, these cases are neither binding precedent nor analogous to Plaintiff's case. In *Greeno*, the Seventh Circuit found deliberate indifference where the providers gave the plaintiff Maalox for a severe ulcer for a year and half without seeking other alternative treatment and at one point denied the plaintiff all medical treatment.[57] And in *Berry*, the Seventh Circuit found a triable issue of fact where the doctor refused to refer an inmate to a dentist for a toothache for two months, persisting in the "easier and less efficacious treatment" of giving him Tylenol, despite knowing it was ineffective.[58] Here, Staley

---

[54] *See Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (citing *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (affirming the district court's grant of summary judgment against a prisoner who believed he needed additional medication and treatment by a specialist)).

[55] 414 F.3d 645 (7th Cir. 2005).

[56] 604 F.3d 435 (7th Cir. 2010).

[57] 414 F.3d at 654-55.

[58] 604 F.3d at 441.

did not persist in a single treatment but offered Plaintiff alternative medications. Her actions demonstrate a responsiveness to Plaintiff's complaints that is not found in *Berry* and *Greeno*. Accordingly, the Court finds that Plaintiff fails to show a genuine issue of material fact as to whether Nurse Staley was deliberately indifferent to his serious medical needs. The Court grants summary judgment in Nurse Staley's favor on Plaintiff's § 1983 claim.

      6.     *VitalCore*

Plaintiff asserts a *Monell* claim against VitalCore alleging that VitalCore maintains a policy that results in deliberate indifference to his medical needs. Specifically, Plaintiff alleges that VitalCore maintains a policy that denies narcotic pain medication to inmates. To prevail on a *Monell* claim, a plaintiff must show "(1) a constitutional violation by a municipal employee, (2) the existence of a municipal custom or policy and (3) a direct causal link between the custom or policy and the violation alleged."[59] A plaintiff does not prevail under *Monell* when "there was no underlying constitutional violation by any of its officers."[60] As discussed above, the factual record demonstrates that Defendants responded appropriately to Plaintiff's chronic health conditions. Without an underlying constitutional violation, Plaintiff's *Monell* claim fails the first prong. Accordingly, VitalCore is entitled to summary judgment on this claim.

**B.**    **Expert Witness Report**

Defendants alternatively seek summary judgment on the basis that Plaintiff is required to submit an expert witness report to prove his claim for deliberate indifference. Because the Court

---

[59] *Douglass v. Garden City Cmty. Coll.*, 543 F. Supp. 3d 1043, 1061 (D. Kan. 2021) (citations omitted).

[60] *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993).

grants summary judgment in Defendants' favor on the basis that Plaintiff cannot prove his deliberate indifference claim, the Court declines to address this argument.

### IV.    Conclusion

The Court denies Plaintiff's Motion to Declare Defendants' Expert Report Inadmissible. As to Defendants' Motion for Summary Judgment, the Court finds that Plaintiff fails to establish a genuine issue of material fact as to the subjective component of his deliberate indifference claim. Therefore, the Court grants summary judgment in Defendants' favor.

**IT IS THEREFORE ORDERED THAT** Defendants' Motion for Summary Judgment (Doc. 130) is **GRANTED**.

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion to Declare Defendants' Expert Report Inadmissible under Federal R. Evid. 702 (Docs. 147 and 155) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 20th day of May, 2026.

This case is closed.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE